NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2026 IL App (4th) 251190-U

NO. 4-25-1190

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
August 10, 2026
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Winnebago County |
| PAUBLO J. ZAPATA, | ) | No. 21CF1052 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Brendan A. Maher, |
| | ) | Judge Presiding. |

JUSTICE DeARMOND delivered the judgment of the court.
Justices Knecht and Vancil concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The appellate court affirmed, finding the trial court (1) correctly sentenced defendant on the underlying charge, not as punishment for his conduct while on probation and (2) did not demonstrate a policy of refusing to grant subsequent sentences of probation to certain classes of crimes or individuals.

¶ 2    Defendant, Paublo J. Zapata, appeals from the trial court's judgment resentencing him to seven years' imprisonment for arson (720 ILCS 5/20-1(a)(1) (West 2020)) following the revocation of his probation. Defendant argues the court erred because it resentenced him based on his conduct while on probation instead of the original offense. He also claims the court plainly erred because it was erroneously predisposed to give him a prison sentence, rather than another sentence of probation. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4    In June 2021, defendant was indicted on charges of aggravated arson (count I)

(720 ILCS 5/20-1.1(a) (West 2020)), arson (count II) (720 ILCS 5/20-1(a)(1) (West 2020)), and criminal damage to property (count III) (720 ILCS 5/21-1(a)(1)(H) (West 2020)), stemming from allegations that defendant, by way of fire, caused damage to a gas station in Rockford, Illinois, after barricading himself inside the manager's office.

¶ 5                                                    A. Guilty Plea

¶ 6        The matter proceeded to a guilty-plea hearing in September 2022. At the hearing, the State explained defendant agreed to enter an open plea of guilty to count II and that he was eligible for extended-term sentencing of 3 to 14 years in prison. The remaining counts would be dismissed, along with a number of pending misdemeanor cases The State then provided a factual basis for defendant's plea, which defendant stipulated would be the evidence if the case went to trial. The trial court found defendant's plea to be knowing and voluntary and accepted the plea agreement. The State recommended an eight-year sentence, while the defense sought probation or a four-year sentence. During sentencing, the court noted that with defendant's credit for time served, a four-year sentence would net "probably eight months." After substantial discussion about how, in defendant's situation, he would be under supervision much longer on probation than any actual time served on a minimal prison sentence, the court acknowledged defendant's professed desire for structure, treatment, and monitoring as a tougher choice under the circumstances. The court placed defendant on 48 months' probation, and in doing so, it admonished defendant that if he "doesn't perform on probation" and returns "on a petition to [revoke] probation, on a sentence like this, he's not getting probation again."

¶ 7                    B. Petition to Revoke Probation and Resentencing

¶ 8        The State filed a petition to revoke defendant's probation in May 2024. In it, the State alleged defendant violated his probation conditions by (1) failing to attend three probation

appointments in June, October, and December 2023; (2) testing positive for cocaine five times between July 2023 and April 2024; (3) failing to submit to drug screening on May 1, 2024; and (4) failing to cooperate and satisfactorily complete any assessment, treatment, education, or counseling as directed. Defendant admitted the first allegation in the petition, and in exchange, the State dismissed the remaining allegations.

¶ 9        The trial court continued defendant's resentencing hearing several times. A bench warrant was issued for defendant's arrest for failure to appear in November 2024, and he was arrested and released to probation the following month. The court then issued another bench warrant for defendant's arrest after he failed to appear on March 28, 2025.

¶ 10        The trial court eventually held the resentencing hearing in June 2025. In aggravation, the State submitted a series of photos showing how defendant started the gas-station fire. In mitigation, defendant testified on his own behalf and stated he had been diagnosed with "[post-traumatic stress disorder [(PTSD)] and anxiety." He did not remember much of what happened on the day he set the fire because he had been "drinking and doing cocaine" on "the day prior and that day." Defendant believed he had a substance abuse problem.

¶ 11        The presentence investigation report (PSI) included the following description of the original offense:

> " 'On June 8, 2021, officers from the Rockford Police
> Department responded to 550 Southrock Drive, the Mobil Gas
> Station ***. Officers met with Kimberly Singletary who stated that
> [defendant] ran into the store, barricaded himself in the manager's
> office, and started a fire while employees and customers were
> inside the building. Rockford Fire Investigator Cordonnier

determined the fire was started with an open flame via direct human involvement and caused scorch marks and soot deposits on the walls. The use of a dry chemical fire extinguisher damaged the audio and video equipment located in the manager's office and required the disposal of all food and beverage, causing over $10,000 in damage. Kimberly Singletary told officers that she and other employees asked [defendant] to leave multiple times and that he was not an employee of the business.' "

¶ 12        In addition, the PSI and defendant's own admissions reflected the following. Defendant was a high school graduate, employed full-time, and had four children, with whom he interacted with daily. Defendant self-reported he habitually used cocaine "once a week" until his arrest, and he enjoyed the comradery of using it socially. When it came to alcohol, defendant cycled between relapse and sobriety.

¶ 13        The PSI also contained a summary of defendant's criminal history, which spanned over two decades. Defendant's criminal history included numerous traffic-related convictions, as well as convictions for driving under the influence of alcohol, aggravated assault with a deadly weapon, aggravated criminal sexual abuse, failing to report an address change as a sex offender, manufacture or delivery of between 100 and 400 grams of cocaine, burglary, and aggravated battery. Defendant had failed to comply with multiple community-based sentences and served multiple sentences of imprisonment.

¶ 14        Further, the PSI detailed defendant's performance while on probation in the present matter. According to the PSI, defendant "failed to report to the probation department on 06/22/23, 10/10/23, and 12/19/23." Defendant claimed he was confused about the first two dates

and "had a poor habit of not setting up reminders on his phone." Defendant missed seven drug screenings between May 2024 and June 2024. He tested positive for cocaine five times between July 2023 and April 2024. He tested positive for opiates and alcohol in February and April 2024, respectively. In May 2024, defendant was unsuccessfully discharged from anger management treatment, failed to engage in domestic violence treatment, and stopped reporting to the probation department.

¶ 15          During arguments, the State recommended defendant be sentenced to 10 years' imprisonment. In doing so, the State asked the trial court to consider the underlying facts of defendant's offense, emphasizing defendant purposefully barricaded himself in the manager's office of a gas station, "deliberately put flammable materials together, and then lit those on fire," despite the presence of bystanders. The State also argued a prison sentence was necessary to deter others, given the nature and severity of the offense, defendant's decision to stop complying with the conditions of his probation for "over almost nine months," and defendant's lengthy criminal history. Additionally, the State argued defendant was unlikely to comply with another sentence of probation, pointing out defendant's inability to successfully complete a community-based sentence and noting the "very short periods of time, between [defendant] being placed on probation or being paroled and then committing new offenses."

¶ 16          Defense counsel acknowledged defendant's "hefty criminal record" and that his conduct in starting the fire threatened serious harm. However, counsel argued defendant did not contemplate that his conduct would do so and emphasized defendant's statements in the PSI that he was "on drugs" and experiencing "a period of psychosis at the time." Counsel further argued defendant's diagnoses of "PTSD, depressive disorder, bipolar disorder, and anxiety" contributed to how defendant conducted himself on the day he started the fire. Finally, defense counsel

requested the trial court consider the fact defendant took an active role in his children's lives and pointed out that, "at times," defendant was their primary caregiver and primary means of financial support. Defense counsel acknowledged defendant knew he was not likely to receive another sentence of probation, and "he regrets how probation has turned out, but he understands that." Asking for leniency, counsel recommended a sentence of five years.

¶ 17       Defendant also gave a statement in allocution. He apologized to the trial court "for [his] actions and not completing [probation]," explaining "[I]t wasn't me, it was my addiction." He also apologized to his probation officer and acknowledged he "left her hanging" when he "went [absent without leave (AWOL)]." Defendant claimed he "asked for help" and "tried to go to every place." He added, "I'm not in the streets like I used to be, like ***  everything the other State's attorney said, *** I'm not like that no more." Defendant said he "used to get arrested a couple of times a month" when he was younger, but he "changed after 2006" and that he "[did not] get arrested like that no more." Defendant concluded by stating, "I got a family; I got kids ***, I do a lot with them," and that "[i]f it wasn't for the addition [*sic*], I would have completed it."

¶ 18       Before pronouncing its sentence, the trial court stated it considered the parties' arguments and defendant's testimony. Then, in addressing "[defendant's] most current comments," the court expressed its desire "to kind of make a record of where we've been," and it commented at length on the "difficult time" it was having with the "idea that [defendant] [had] been *** compliant with probation." In particular, the court pointed out defendant's "fairly quick failure," his "fairly long period of time" being "AWOL from probation," and his repeated failures to appear. And despite being "actually hopeful" defendant would comply, the court ruled out imposing another sentence of probation after reminding defendant of its admonishment to

- 6 -

him at the time he was originally sentenced "that if the State needed to file a petition to [revoke] his existing probation sentence, [defendant] *** would very likely be sentenced to IDOC [the Illinois Department of Corrections]." The court remarked on its obligation to consider the arguments as to sentencing alternatives and the evidence offered in aggravation and mitigation. It then noted the circumstances of the underlying offense and that defendant faced a sentence of up to 14 years in prison. Ultimately, the court resentenced defendant to seven years' imprisonment "based on the arguments made by the parties on both sides and having, again, reviewed the entire [PSI]."

¶ 19                                C. Motion to Reconsider

¶ 20           In July 2025, defendant filed a motion to reconsider, arguing the seven-year sentence was excessive. In support of his motion, defendant asserted his unsuccessful performance while on probation appeared to be one of the primary reasons for the sentence. Defendant also maintained that, while consideration of his probation performance is relevant to the trial court's sentencing determination, it was "different than punishing [him] for poor probation performance."

¶ 21           The trial court conducted a hearing on defendant's motion in November 2025. In support of the motion to reconsider, defense counsel asserted "that penalizing [defendant] with a higher sentence because of probation violations is not a permissible element in aggravation." In doing so, counsel noted the "major portion" of the court's oral pronouncement, which highlighted defendant's conduct while on probation, and "that there needed to be a consequence for not complying with probation." And while counsel acknowledged that "it [was] proper to consider poor performance or nonperformance on probation in determining what a defendant's rehabilitative capacity is," counsel maintained defendant's seven-year sentence was excessive

- 7 -

"in light of the actual offense and what happened during the arson, and the other factors in mitigation and aggravation."

¶ 22        The State, on the other hand, argued a defendant's conduct that gave rise to a revocation of probation was relevant in determining an appropriate sentence, "as long as the sentence was imposed for the original offense, not as a penalty for subsequent conduct." The State then asserted that "[i]t was clear *** that the Court imposed the sentence based on the original offense" and specifically recalled the trial court's consideration of "everything *** in the [PSI]," which was a "very thorough report" that "included [defendant's] extensive prior criminal history."

¶ 23        Following the parties' arguments, the trial court again hearkened back to its initial admonishment to defendant "that if he got a petition to vacate his probation, then [the court] would likely sentence him to [prison]." The court also recounted the procedural posture of the case and discussed defendant's conduct since being placed on probation. In doing so, the court clarified that its consideration of defendant's "miserable performance had nothing really to do with any of the factors in aggravation or any of the factors in mitigation." Rather, it had to with defendant's initial "opportunity to complete a probation sentence" and his squandering of it by doing "literally *** nothing." The court continued:

>        "[S]o if the question is why did I impose a 7-year sentence on it,
> *** I was listening to both sides arguing about it and [the] State
> was asking me to sentence [defendant] to 10 years and [defense
> counsel was] asking me to sentence him to 5 years, but the reason
> for my thinking on that was the fact that he literally had
> accomplished almost nothing and caused headaches to his public

defender, the State's attorney's office, and probably more importantly to [his probation officer]; he was an impossible client to work with, all of which is his fault.

So I have no reason to believe that a 7-year sentence is not appropriate, mainly for those reasons; he did nothing on probation, he made no effort at getting anything done on probation, and he has—he has stayed on probation effectively; well, up to the sentencing hearing and until he was sentenced, so to the extent that he deserves in some way a reduction in sentence because, well, he needs to get back to his kids, he should have thought about that when he first got on his probation sentence in June of 2023; he made no thought about that, and he did nothing to do anything at all between the time he was put on probation up through and including today."

The court ultimately denied the motion to reconsider.

¶ 24     This appeal followed.

¶ 25                                  II. ANALYSIS

¶ 26     On appeal, defendant claims the trial court improperly based the seven-year sentence on his conduct while on probation instead of the original offense. He further claims the court plainly erred because it was erroneously predisposed to impose a prison sentence, given that it admonished defendant during the original sentencing hearing that it would likely send him to prison if he violated his probation.

¶ 27                        A. Conduct While on Probation

¶ 28    Defendant argues his seven-year sentence was improperly imposed as punishment for his conduct while on probation. According to defendant, the trial court focused entirely on his conduct while on probation to the exclusion of any meaningful analysis of the original offense.

¶ 29    A trial court has wide latitude in fashioning a sentence, and that sentence will not be reversed absent an abuse of discretion. *People v. Alexander*, 239 Ill. 2d 205, 212 (2010). "The general rule is that we may not reduce a sentence that is within the statutory range unless it is greatly at variance with the spirit and purpose of the law or manifestly disproportionate to the nature of the offense." (Internal quotation marks omitted.) *People v. Miller*, 2021 IL App (2d) 190093, ¶ 22. Importantly, "the trial court is presumed to know the law and to follow it unless the record affirmatively indicates the contrary." *Miller*, 2021 IL App (2d) 190093, ¶ 22.

¶ 30    Once the trial court finds a defendant has violated a condition of probation, it "may impose any other sentence that was available *** at the time of initial sentencing." 730 ILCS 5/5-6-4(e) (West 2020); *People v. Risley*, 359 Ill. App. 3d 918, 920 (2005). "The manner in which a defendant conducts himself or herself while on probation is an appropriate consideration in any sentencing hearing." *People v. Young*, 138 Ill. App. 3d 130, 142 (1985). And while the court cannot punish a defendant for the conduct that constituted the probation violation, " '[i]t is appropriate for a defendant who conducts himself poorly while on probation to receive a more severe sentence than he originally received.' " *People v. Pina*, 2019 IL App (4th) 170614, ¶ 30 (quoting *People v. Palmer*, 352 Ill. App. 3d 891, 895 (2004)). "[P]recluding the use of relevant and reliable evidence because no conviction was obtained would deny the sentencing authority the use of some of the most relevant evidence of a defendant's character, propensities, and likelihood of rehabilitation," which "is critical to the trial court's role in deciding on the most appropriate sentence for each individual offender." *People v. Jackson*, 149 Ill. 2d 540, 553

(1992). Moreover,

> "[a]n analysis which suggests that the trial court (1) cannot consider the conduct which resulted in the probation being revoked, or (2) cannot consider such conduct past a certain point in the sentencing hearing, or (3) that thereafter a sentencing judge must specifically state that he nevertheless is sentencing the defendant solely on the basis of the original offense—and has considered the conduct which was the basis for the revocation only to the extent of the defendant's rehabilitative potential—is not only without merit but reflects a head-in-the-sand attitude. When the trial court originally imposed the sentence of probation, it made that determination on the basis of all of the records and reports available. Conduct which leads to revocation of probation has been regarded as a 'breach' of the court's trust, or as otherwise causing the court to lose confidence in the defendant's rehabilitative potential." *Young*, 138 Ill. App. 3d at 140.

¶ 31     The trial court's remarks "must be taken in context, and read in their entirety, including arguments of counsel." *Young*, 138 Ill. App. 3d at 142. Moreover, this court has cautioned that, given the deference owed to sentencing decisions, sentences imposed after revocation of probation should be no easier to overturn than sentencing decisions generally. *Young*, 138 Ill. App. 3d at 142. Thus,

> "a sentence within the statutory range for the original offense will not be set aside on review *unless* the reviewing court is strongly

- 11 -

persuaded that the sentence imposed after revocation of probation was *in fact* imposed as a penalty for the conduct which was the basis of revocation, and *not* for the original offense." (Emphases in original.) *Young*, 138 Ill. App. 3d at 142.

¶ 32 Here, defendant pleaded guilty to arson, a Class 2 felony with a sentencing range of three to seven years' imprisonment. 720 ILCS 5/20-1(c) (West 2020); 730 ILCS 5/5-4.5-35(a) (West 2020). As part of the plea, defendant was being relieved of a count of aggravated arson, a nonprobationable Class X felony with a sentencing range of 6 to 30 years. 720 ILCS 5/20-1.1(b) (West 2020); 730 ILCS 5/5-4.5-25(a) (West 2020). In addition, defendant's criminal history rendered him eligible for an extended-term sentence of up to 14 years' imprisonment. See 730 ILCS 5/5-4.5-35(a) (West 2020). Thus, the trial court's sentence of seven years in prison was within the statutory range and presumptively proper. *Miller*, 2021 IL App (2d) 190093, ¶ 22.

¶ 33 Citing *People v. Gansz*, 2024 IL App (4th) 230243-U, defendant contends the trial court focused entirely on his conduct while on probation, to the exclusion of any meaningful analysis of the original offense. However, in *Gansz*, the trial court explicitly said " 'the level of criminality that has taken place since [the defendant] had [pleaded] guilty' " was the " 'most disturbing' " or " 'most aggravating' " factor it was considering. *Gansz*, 2024 IL App (4th) 230243-U, ¶ 38.

¶ 34 Unlike in *Gansz*, the trial court here made no such comment. Instead, the court's comments on defendant's conduct were made within the context of the extraordinary opportunity defendant was given, how "hopeful" the court had been that defendant would take advantage of that opportunity, and why the court was forgoing another sentence of probation. In fact, the court's reflection on its earlier admonishment that defendant would likely be sentenced to a term

- 12 -

of imprisonment if the State filed a petition to revoke his existing probation underscores the fundamental distinction from *Gansz*. Whereas in *Gansz*, the defendant was punished for conduct while on probation, as it was the " 'most aggravating' " factor the court considered (*Gansz*, 2024 IL App (4th) 230243-U, ¶ 38), the court here referred back to its judgment to grant probation over incarceration and discussed how defendant's conduct showed that another term of probation would be pointless, not how the conduct was aggravating. Defendant demonstrated to the court that any compliance would be on his own terms through his "fairly quick failure," the "fairly long period of time" he disregarded the reporting requirements of probation, and his repeated failures to appear for previous court dates. Thus, the court determined incarceration was warranted.

¶ 35 Defendant, however, asserts the trial court only mentioned the underlying offense tangentially, and he takes exception with the court's lengthy and albeit disjointed discussion regarding the futility of resentencing him to probation. He makes much of the court's statements at the hearing on the motion to reconsider and claims the court "consciously and expressly considered probation performance even to the exclusion of considering the relevant sentencing factors associated with the original offense." But defendant is wrong. Nothing in the record indicates the court considered defendant's conduct while on probation to the exclusion of anything. In fact, the court explicitly stated that, as "miserable" as defendant's performance was while on probation, it "had nothing really to do with any of the factors in aggravation or any of the factors in mitigation." Instead, it had to with defendant's initial "opportunity to complete a probation sentence" and that he wasted it by doing "literally *** nothing." Further, it is no surprise that the court's comments focused on defendant's inability to comply with the court's orders. The court recalled, once again, what it told defendant when it originally placed him on

probation—"that if he got a petition to vacate his probation, then [the court] would likely sentence him to [prison]." And yet, defendant's probation for the original offense had no effect on his conduct, which, in turn, caused the court to lose any confidence it might have had regarding defendant's rehabilitative potential. See *Young*, 138 Ill. App. 3d at 140.

¶ 36 Still, we are once again faced with an argument based on the parsing of a trial court's comments during a sentencing hearing, considered as if in a vacuum. Trial courts have been threatening defendants with lengthy records, replete with abysmal performance on previous community-based sentences, with the likelihood that failure on probation will warrant a penitentiary sentence for just as long as such defendants have promised that, if only given one more chance, they will never appear in the judge's courtroom again. The court's comments here were just that and nothing more. The court's references to defendant's probation performance, rather than being the foundation of the sentence, were intended as evidence for why any further consideration of probation was fruitless. At the court's behest, the time between the plea and sentencing was extended in an effort to permit defendant the opportunity to show he could successfully comply with a probation sentence. The court reminded defendant of what he said about probation during at least one of the many revocation hearings held before the case proceeded to resentencing, again in the hopes of obtaining defendant's compliance.

¶ 37 So, when we take the remarks of the trial court at the resentencing hearing in context, reading them in their entirety and considering counsel's arguments, we find the record reveals no error. The record shows the court's comments regarding defendant's noncompliance were in response his statement in allocution, where he claimed he "asked for help," "tried to go to every place," and that, "[i]f it wasn't for the addition [*sic*], [he] would have completed it." The court's remarks also followed defense counsel's acknowledgment of defendant's "hefty criminal

record" and that his conduct in setting the fire threatened serious harm and the State's argument that a prison sentence was necessary based on the serious circumstances of the original offense and the unlikelihood defendant would comply with another sentence of probation. The court stated it based the sentence on the arguments of the parties and the information provided in the PSI, which the court stated it reviewed in its entirety. The PSI detailed the circumstances underlying the original offense. It also contained a summary of defendant's criminal history, which included numerous traffic-related convictions, as well as convictions for driving under the influence of alcohol, aggravated assault with a deadly weapon, aggravated criminal sexual abuse, failing to report an address change as a sex offender, burglary, aggravated battery, and manufacture or delivery of between 100 and 400 grams of cocaine. The PSI also indicated defendant failed to comply with multiple community-based sentences; he served multiple sentences of imprisonment. Defendant's criminal record, as outlined in the PSI, spans over 20 years.

¶ 38   In sum, when reading the remarks of the trial court in context and in their entirety, including arguments of counsel, we are not *strongly persuaded* the court's sentence was *in fact* punishment for defendant's conduct while on probation. *Young*, 138 Ill. App. 3d at 142. The totality of the record shows the court did not impose the sentence to punish defendant for his actions while on probation; defendant was incarcerated because probation had failed, and the court found that further probation was futile. For as long as trial judges have been sentencing defendants, circumstances have arisen where the judge, perhaps even against their better judgment, wants to see a defendant succeed in spite of themselves and offers one last chance at probation. The comments of the court at the time of sentencing and resentencing here evince a court in this situation. Accordingly, this court will not disturb the trial court's exercise of its

- 15 -

discretion. *Alexander*, 239 Ill. 2d at 212.

¶ 39                    B. Plain Error or Ineffective Assistance of Counsel

¶ 40        Defendant concedes he forfeited his argument the trial court was erroneously predisposed to sentence him to prison, rather than probation, because defense counsel failed to raise it in the posttrial motion. However, defendant contends we can address this issue as first-prong plain error.

¶ 41        "It is well settled that, to preserve a claim of sentencing error, both a contemporaneous objection and a written postsentencing motion raising the issue are required." *People v. Hillier*, 237 Ill. 2d 539, 544 (2010). However, under the plain-error doctrine, a reviewing court may address a forfeited claim of sentencing error when a "clear or obvious error" occurred and "(1) the evidence at the sentencing hearing was closely balanced [(first-prong plain error)], or (2) the error was so egregious as to deny the defendant a fair sentencing hearing [(second-prong plain error)]." *Hillier*, 237 Ill. 2d at 545. "Without reversible error, there can be no plain error." *People v. Jackson*, 2020 IL 124112, ¶ 88. The defendant bears the burden of persuasion in establishing plain error. *Hillier*, 237 Ill. 2d at 545.

¶ 42        As previously stated, a trial court has wide latitude in fashioning a sentence, and that sentence will not be reversed absent an abuse of discretion. *Alexander*, 239 Ill. 2d at 212. A court may not impose a sentence "greatly at variance with the spirit and purpose of the law" (*People v. Halerewicz*, 2013 IL App (4th) 120388, ¶ 41) and penalties must (1) take into account the seriousness of the offense and (2) be consistent with the goal of restoring the offender to useful citizenship. Ill. Const. 1970, art. I, § 11. A reviewing court gives deference to a trial court's sentencing decision because the trial court is in a better position to examine the defendant's character, credibility, demeanor, mentality, habits, and age. *People v. Stacey*, 193 Ill.

2d 203, 209 (2000).

¶ 43 Defendant cites *People v. Bolyard*, 61 Ill. 2d 583 (1975), and *People v. Daly*, 2014 IL App (4th) 140624, to support his contention that the trial court erred by categorically refusing to consider another sentence of probation. In *Bolyard*, the trial court denied probation after the defendant was convicted of indecent liberties with a child, affirmatively stating that it subscribed to a policy of always denying probation for that type of offense. *Bolyard*, 61 Ill. 2d at 585. The Illinois Supreme Court concluded the defendant was entitled to a new sentencing hearing, explaining that "the trial judge arbitrarily denied probation because [the] defendant fell within the trial judge's category of disfavored offenders." *Bolyard*, 61 Ill. 2d at 587.

¶ 44 In *Daly*, the trial court denied probation after the defendant was convicted of reckless homicide following an incident in which the all-terrain vehicle the defendant was driving overturned, killing a passenger, and the defendant had admitted to drinking earlier in the day. *Daly*, 2014 IL App (4th) 140624, ¶ 3. This court concluded the trial court abused its discretion, in part based on comments made by the trial court at sentencing that implied it would deny probation to any offender who "drinks and drives and kills someone," regardless of the specific facts of the case. *Daly*, 2014 IL App (4th) 140624, ¶ 36.

¶ 45 Both *Bolyard* and *Daly* are inapposite. It is a core principle of sentencing that an offender is entitled to an individualized determination of the appropriate penalty for his or her conduct. See *People v. Mace*, 79 Ill. App. 2d 422, 430 (1967). Policies such as those in *Bolyard* and *Daly* depart from that core principle; they depend on generalities about classes of defendants rather than the facts of a particular case. But that is not the case here. The trial court's comments at the resentencing hearing are replete with reference to *this* defendant and *his* conduct. When the court originally placed defendant on probation, it tried to impress upon him that he could not

expect lenient treatment again should he flagrantly violate his probation, and the court would not hesitate to impose a prison sentence. These remarks by the court are not analogous to those of the sentencing courts in the cases cited by defendant, nor do they suggest the court unjustly predetermined that certain classes of crimes or individuals would not be considered for subsequent sentences of probation. In short, the court did not deprive defendant of an individualized sentencing determination.

¶ 46    Accordingly, we must honor defendant's procedural default, as no plain error occurred. *Jackson*, 2020 IL 124112, ¶ 88. "Additionally, the absence of error nullifies any ineffective assistance of counsel argument because counsel's performance is not deficient for failing to raise a meritless issue." *People v. Stone*, 2018 IL App (3d) 160171, ¶ 20.

¶ 47                        III. CONCLUSION

¶ 48    For the reasons stated, we affirm the trial court's judgment.

¶ 49    Affirmed.